**MALK & POGO LAW GROUP, LLP**
Valter Malkhasyan (SBN 348491)
*valter@malkpogolaw.com*
Erik Pogosyan (SBN 345650)
*erik@malkpogolaw.com*
1241 S. Glendale Ave, Suite 204
Glendale, CA 91205
Tel: (818) 484-5204

*Counsel for Plaintiff and the proposed Class*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARAT MARTIROSYAN, individually and on behalf of all others similarly situated, | Case No.  2:24-cv-09557-MWF-SK |
| Plaintiff, | *Hon. Michael W. Fitzgerald* |
| vs. | **FIRS AMENDED COMPLAINT** |
| 9199-4467 QUÉBEC INC. d/b/a EARTH RATED, | 1. VIOLATION OF CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CIVIL CODE § 1750, *et. seq.* |
| Defendant. | 2. VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW, BUSINESS AND PROFESSIONS CODE § 17500, *et. seq.* |
| | 3. VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW, BUSINESS AND PROFESSIONS CODE § 17200, *et. seq.* |
| | 4. BREACH OF EXPRESS WARRANTY |
| | 5. BREACH OF IMPLIED WARRANTY |
| | 6. VIOLATION OF MMWA, 15 USC SECTION 2301, et seq., WRITTEN WARRANTY |
| | 7. VIOLATION OF MMWA 15 USC SECTION 2301, et seq., IMPLIED WARRANTY OF MERCHANTABILITY |
| | 8. RESTITUTION BASED ON QUASI-CONTRACT/UNJUST ENRICHMENT |
| | **DEMAND FOR JURY TRIAL** |

1

Malk & Pogo Law Group, LLP   |   1241 S. Glendale, Ave Suite 204, Glendale, CA 91205   |   P: (818) 484-5204   |   malkpogolaw.com

Plaintiff Marat Martirosyan ("**Plaintiff**"), individually and on behalf of all other similarly situated purchasers (the "**Class**" and **"Class Members"**), brings this class action lawsuit against 9199-4467 QUÉBEC INC. d/b/a Earth Rated ("**Defendant**"), and alleges as follows:

## INTRODUCTION

1.    This is a class action lawsuit brought on behalf of all purchasers of Earth Rated "Plant-Based" Dog Wipes (available in various scents and sizes) (the **"Product"**), a pet wipe that is sold online and at retail locations throughout California and the United States.

2.    Defendant falsely and deceptively advertises the Products as "plant-based" ("**Challenged Representation**"). However, contrary to the Product's Challenged Representation, as explained in detail below, the Product actually contains numerous non-plant-based, unnatural, synthetic, artificial, and/or highly processed ingredients. Through falsely, misleadingly, and deceptively labeling the Product, Defendant seeks to take advantage of consumers' desire for a truly plant-based product. Yet, Defendant has done so at the expense of unwitting consumers, as well as Defendant's lawfully acting competitors, over whom Defendant maintains an unfair competitive advantage.

3.    Plaintiff brings this action individually and in a representative capacity on behalf of similarly situated consumers who purchased the Product during the relevant Class Period (Class and/or Subclass defined infra), for dual primary objectives: *One*, Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class/Subclass, a monetary recovery of the price premium Plaintiff and consumers overpaid for a Product that should, but fails to, comport with the Challenged Representation (which may include, for example, damages, restitution, disgorgement, and/or any applicable penalties, fines, or punitive/exemplary damages) solely to the extent that the causes of action pled herein permit such recovery. *Two*, Plaintiff seeks, on his individual behalf and on behalf of the Class/Subclass, injunctive relief to stop

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

Defendant's unlawful manufacture, marketing, and sale of the Product with the Challenged Representation to avoid or mitigate the risk of deceiving the public into believing that the Product conforms to the Challenged Representation, by requiring Defendant to change its business practices, which may include one or more of the following: removal or modification of the Challenged Representation from the Product's labels, removal or modification of the Challenged Representation from the Product's advertising, modification of the Product's formulation be it a change in ingredients or its sourcing and manufacturing processes, and/or discontinuance of the Product's manufacture, marketing, and/or sale.

4.    A true and correct copy of the Product label is pictured below.

*Figure 1* – **Earth Rated "Plant-Based" Dog Wipes**



Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malk@pogolaw.com

---

3

CLASS ACTION COMPLAINT



**JURISDICTION AND VENUE**

5.      This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1332 and the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

6.      Venue is proper in this District under 28 U.S.C. § 1391, because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in this District. Plaintiff is a citizen of California who resides in this District. Plaintiff purchased the Product in this District. Defendant has deliberately marketed,

advertised, and sold the Products within this District. Defendant receives substantial compensation from sales in this District.

7.    Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendant and California. Defendant is authorized to do and is doing business in California.

## **PARTIES**

8.    **Plaintiff:** Plaintiff is, and at all times relevant hereto was, a citizen of California. Plaintiff purchased the Earth Rated "Plant-Based" Dog Wipes from a Petco location in Los Angeles in July of 2024.

9.    In making his purchase, Plaintiff relied on Defendant's labeling and advertising claims, specifically the "Plant-Based" representation clearly printed on the front-facing panel of the Product as it was displayed at the point of sale.

10.    Given the design, packaging style, and the way Defendant's Products are displayed in retail stores, the panel displayed in *Figure 1* above functions as the front of the packaging. The Products are stocked horizontally on store shelves, with the the panel displayed in *Figure 1* facing outward, making it the primary surface visible to consumers at the point of sale. As a result, the "Plant-Based" representation printed on the front-facing panel is the first and most prominent label consumers, including Plaintiff, see when making purchasing decisions.

11.    Plaintiff paid a premium for dog products that are plant-based, relying on Defendant's representations. If Plaintiff had known that the Product contained ingredients that are non-plant-based, unnatural, synthetic, artificial, and/or highly processed, then Plaintiff would not have purchased the Product, or he would have purchased it at a substantially lower price.

12.    These claims were prepared and approved by Defendant and its agents and disseminated statewide and nationwide, to encourage consumers to purchase the Products.

Malk & Pogo Law Group, LLP   |   1241 S. Glendale, Ave Suite 204, Glendale, CA 91205   |   P: (818) 484-5204   |   malkpogolaw.com

13.  **Plaintiff's Future Harm:** Plaintiff would like to purchase the Product again only if he can be sure that Defendant is compliant with the state consumer protection laws. Plaintiff continues to see Defendant's Product in stores available for purchase, and desires to purchase it again if the representations regarding  the Plant-Based Representation was in fact true. Since Plaintiff would like to purchase the Product again to obtain a pet product that, as advertised, is truly plant-based and therefore does not contain non-plant-based, unnatural, synthetic, artificial, and/or highly processed ingredients, Plaintiff would purchase it again in the future—despite the fact that it was once marred by false advertising or labeling—as Plaintiff would reasonably, but incorrectly, assume the Product was improved (no longer contains non-plant-based, synthetic, artificial, and/or highly processed ingredients). In that regard, Plaintiff is an average consumer who is not sophisticated in the chemistry, manufacturing, and formulation of pet products, such as the Product. Neither Plaintiff, nor reasonable consumers, have the requisite knowledge to accurately differentiate between ingredients that are "plant-based" and those that are "synthetic"—particularly those non-plant-based ingredients identified *infra*. Accordingly, Plaintiff is at risk of reasonably, but incorrectly, assuming that Defendant fixed the formulation of the Product such that Plaintiff may buy it again, believing it to no longer be falsely advertised. Plaintiff is, therefore, currently and in the future deprived of the ability to rely on the Challenged Representation. Based on information and belief, the labeling of the Product purchased by Plaintiff is typical of the labeling of the Product purchased by members of the class.

14.  **Defendant:** 9199-4467 Québec Inc. d/b/a Earth Rated is a Canadian corporation with its principal business at 8500 Decarie Blvd., 7th Floor, Mont-Royal, Québec, H4P 2N2, Canada. Defendant directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California.  Defendant is the owner, manufacturer, and distributor of the Product,

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

and is the company that created and/or authorized the false, misleading, and deceptive packaging of the Product.

## FACTUAL ALLEGATIONS

### A.    Plant-Based Market

15.    Consumers value plant-based products for numerous reasons, including perceived benefits of avoiding diseases, attaining health and wellness, helping the environment, assisting local farmers, assisting factory workers who would otherwise be exposed to synthetic and hazardous substances, and financially supporting the companies that share these values.[1] In response to consumers' desire for plant-based products, many companies, including Defendant, have scrambled to manufacture, market, and sell purportedly "plant-based" products in an effort to gain market share. Unfortunately, rather than creating the natural, plant-based products consumers desire, Defendant has chosen to "greenwash" the Product and market it through deceptive labeling and advertising to convince consumers the Product is plant-based and natural when, in reality, it contains synthetic and highly processed ingredients.

16.    **FTC Guidelines.** In response to frequent and pervasive greenwashing, the United States Federal Trade Commission ("**FTC**") created the "Green Guides" to help companies avoid making misleading and deceptive claims.[2]  As relevant here, the FTC stated:

> Marketers, nevertheless, are responsible for substantiating consumers' reasonable understanding of "biobased," and other similar claims, such as **"plant-based,"** in the context of its advertisements.[3]

16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims, p. 246, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-

---

[1]    *See generally Plant-Based Personal Care Products*, Eternal Spiral Books (Nov. 24, 2018), https://eternalspiralbooks.com/plant-based-personal-care-products/ (last accessed 11/04/2024).
[2]    *See generally* 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims.
[3]    *See* 16 C.F.R. § 260 – Guides for the Use of Environmental Marketing Claims, p. 246, available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-issues-revised-green-guides/greenguidesstatement.pdf (emphasis added).

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

issues-revised-green-guides/greenguidesstatement.pdf (emphasis added). Here, Defendant disregarded FTC guidelines on "Plant-Based" claims, opting to manufacture the Product with ingredients that are neither water nor plant, and at times entirely artificial, synthetic, or substantially processed. Thus, Defendant did not fulfill its responsibility to "substantiat[e] consumers' reasonable understanding of . . . 'plant-based'" advertising claims as reasonable consumers, such as Plaintiff, reasonably believe that "plant-based" Product only contains water or plant ingredients that have not undergone substantial processing.

17.    Consumers are willing to pay a price premium for the "plant-based" products, and believe it is important that products are plant-based.

18.    Similar to a desire for a more expensive brand, consumers associate products labeled as "plant-based" to be better. If the same two products were shown to a consumer, one  of which contained the "plant-based" label, consumers would chose the product with the "plant-based" label, believing to be a better alternative to the same product which does not contain the "plant-based" label.

19.    However, consumers are not scientists. They do not understand the manufacturing process, and are not well-versed in the processes involved in obtaining, synthesizing, or preparing various products and their ingredients.

20.    Consumers rely on the manufacturers to honestly label the products. When consumers see "plant-based" labels, they perceive the products to be fully plant-based, and not containing any non-plant-based ingredients – whether synthetic, processed, chemically altered, or otherwise unnatural.

21.    Consumers rely on the corporate America (and here, on Defendant) to honestly label the products, and chose to buy the "plant-based" products, reasonably believing the front labels to be truthful.

22.    **Reasonable Consumer's Perception.** The Challenged Representation, in isolation or combined with Defendants' marketing campaign and brand strategy, lead reasonable consumers, like Plaintiff, into believing that the Products conform to

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

the Challenged Representation. More specifically, reasonable consumers interpret the Challenged Representation to mean that the Products are "plant-based"— meaning, they only contain natural plant and water ingredients, to the exclusion of artificial and synthetic ingredients. As such, the Product's label has the "capacity, likelihood, or tendency to deceive or confuse the public" into believing that they are fully plant-based and are truthfully labeled. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (citing *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 951 (2002) and *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985)) (The California Supreme Court has recognized "that [consumer protection] laws prohibit 'not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public.'").

23.    The reasonable consumer's perception of the Challenged Representation is consistent with their ordinary and common usage, as defined by dictionaries, and the regulatory definition of artificial:

   a.  **Plant-Based Definition:**
      i.  <u>Merriam-Webster Dictionary Definition: Plant-Based</u>. "[M]ade or derived from plants"; "consisting . . . entirely of food (such as vegetables, fruits, nuts, oils, and beans) derived from plants."[4]
      ii.  <u>Cambridge Dictionary Definition: Plant-Based</u>. "[C]onsisting or made completely of plants."[5]
      iii.  <u>Dictionary.com Definition: Plant-Based</u>. "[C]onsisting entirely … of whole … plant parts, such as vegetables, fruits, grains, nuts, legumes, and seeds."[6]
      iv.  <u>Oxford Learners Dictionary Definition</u>. Plant Based. "[C]onsists … entirely of foods from plants, such as fruits, vegetables and grains."[7]

---

[4]     Merriam-Webster.com, *plant-based*, available at https://www.merriam webster.com/dictionary/plant-based (last accessed 03/26/2025).
[5]     Cambridge Dictionary, *plant-based*, available at https://dictionary.cambridge.org/us/dictionary/english/plant-based (last accessed 11/04/2024).
[6]     Dictionary.com, *plant-based*, available at https://www.dictionary.com/browse/plant-based (last accessed 03/26/2025).
[7]     Oxford Learner's Dictionaries, plant-based, https://www.oxfordlearnersdictionaries.com/us/definition/english/plant-based?q=plant-based (last accessed 03/26/2025).

Malk & Pogo Law Group, LLP    |    1241 S. Glendale, Ave Suite 204, Glendale, CA 91205    |    P: (818) 484-5204    |    malkpogolaw.com

9

b. **Artificial Definitions:**
    i. <u>Merriam-Webster Dictionary Definition: Artificial.</u> "[H]umanly contrived" and "MAN-MADE."[8]
    ii. <u>Cambridge Dictionary Definition: Artificial.</u> "[M]ade by people."[9]
    iii. <u>Dictionary.com Definition: Artificial.</u> "made by human skill; produced by humans (opposed to natural)"; "produced by man; not occurring naturally"; "made in imitation of a natural product, esp as a substitute; not genuine"[10]
    iv. <u>Oxford Learner's Dictionaries Definition: Artificial.</u> "created by people; not happening naturally"[11]
    v. 21 C.F.R. 101.22(a)(1) Definition: "Artificial Flavor." A flavoring agent that "is not derived from . . . . natural sources," like animals, spices, fruits, vegetables, roots, or "similar plant material."

c. **Synthetic Definitions:**

    i. <u>Merriam-Webster Dictionary Definition: Synthetic.</u> "The term 'synthetic' means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]"[12]
    ii. <u>Cambridge Dictionary Definition: Synthetic.</u> "made artificially and not produced from natural substances"; "an artificial substance or material"[13]
    iii. <u>Dictionary.com Definition: Synthetic.</u> "noting or pertaining to compounds formed through a chemical process by human agency, as opposed to those of natural origin"; "something made by a synthetic, or chemical, process"; "(of a substance or material) made artificially by chemical reaction"; "Produced artificially, especially in a laboratory or other man-made environment"[14]
    iv. <u>Oxford Learner's Dictionaries Definition: Synthetic.</u> "artificial; made by combining chemical substances rather than being produced naturally by plants or animals"[15]

---

[8] Merriam-Webster.com, *artificial*, available at https://www.merriam-webster.com/dictionary/artificial (last accessed 03/26/2025).
[9] Cambridge Dictionary, *artificial*, available at https://dictionary.cambridge.org/us/dictionary/english/artificial (last accessed 03/26/2025).
[10] Dictionary.com, *artificial*, available at https://www.dictionary.com/browse/artificial (last accessed 03/26/2025).
[11] Oxford Learner's Dictionaries, *artificial*, available at https://www.oxfordlearnersdictionaries.com/definition/english/artificial#:~:text=artificial%20made%20or%20produced%20to,artificial%20light (last accessed 03/26/2025).
[12] *7 U.S.C. § 6502 (21).*
[13] Cambridge Dictionary, *synthetic*, available at https://dictionary.cambridge.org/dictionary/english/synthetic (last accessed 03/26/2025).
[14] Dictionary.com, *artificial*, available at https://www.dictionary.com/browse/synthetic (last accessed 03/26/2025).
[15] Oxford Learner's Dictionaries Definition, *synthetic*, available at https://www.oxfordlearnersdictionaries.com/definition/english/synthetic_1?q=synthetic (last accessed 03/26/2025).

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP | 1241 S. Glendale, Ave Suite 204, Glendale, CA 91205 | P: (818) 484-5204 | malkpogolaw.com

d. **Man-Made Definitions:**

i. <u>Merriam-Webster Dictionary Definition: Man-Made.</u> "[M]anufactured, created, or constructed by human beings *specifically:* SYNTHETIC."[16]

ii. <u>Cambridge Dictionary Definition: Man-Made.</u> "artificial rather than natural"; "produced or developed by humans rather than coming directly from nature"; "made by people, rather than existing naturally"[17]

iii. <u>Dictionary.com Definition: Man-Made.</u> "produced, formed, or made by humans"; "produced artificially; not resulting from natural processes"; "made or produced by man; artificial"[18]

iv. <u>Oxford Learner's Dictionaries Definition: Man-Made.</u> "made by people; not natural"[19]

24. Accordingly, reasonable consumers, like Plaintiff, interpret the Plant-Based Representations as claims that the Product contains no non-plant-based, unnatural, artificial, and/or synthetic ingredients.

25. **Falsity**. The Challenged Representation is false and deceptive because the Product contains numerous non-plant-based ingredients. Specifically, the Product contains the following non-plant-based, unnatural, synthetic, and/or artificial ingredients, in varying combinations:

● **<u>Citric Acid</u>** is commercially produced using a multi-step chemical reaction and microbial fermentation process involving the bacteria Aspergillus niger and glucose.[20] Bacteria are prokaryotes, and not plants (which are composed of eukaryotic cells).[21] Citric acid contained in the Products is commercially manufactured and the result of extensive chemical processing.2 More than 90 percent of commercially produced

---

16    Merriam-Webster.com, *man-made*, available at https://www.merriam-webster.com/dictionary/man-made (last accessed 03/26/2025).

17    Cambridge Dictionary, *man-made*, available at https://dictionary.cambridge.org/dictionary/english/man-made (last accessed 03/26/2025).

18    Dictionary.com, *man-made*, available at https://www.dictionary.com/browse/man-made (last accessed 03/26/2025).

19    Oxford Learner's Dictionary, *man-made*, available at https://www.oxfordlearnersdictionaries.com/definition/english/man-made?q=man-made (last accessed 03/26/2025).

20    All, et al. *Overview of Citric Acid Production from Aspergillus Niger*. Taylor &amp; Francis, https://www.tandfonline.com/doi/full/10.1080/21553769.2015.1033653. (last accessed 03/26/2025).

21    Prokaryotes: Bacteria &amp; Archaea. Organismal Biology, https://organismalbio.biosci.gatech.edu/biodiversity/prokaryotes-bacteria-archaea-2/. (last accessed 03/26/2025).

CLASS ACTION COMPLAINT

Malk &amp; Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

citric acid, including the citric acid contained in the Products is manufactured through a processed derivative of black mold, *Aspergillus niger.*[22]

● **Caprylyl Glycol** is manufactured synthetically meaning it relies less on natural resources like palm and coconut oil.[23]

● **Glycerin** is synthetic, produced by the hydrogenolysis of carbohydrates. Hydrogenolysis is the chemical reaction whereby a carbon-carbon or carbon-heteroatom single bond is cleaved or undergoes lysis by hydrogen.[24]

● **Propylene Glycol** is a synthetic, water-absorbent, substance which has many uses including being an anti-freeze and being used to make polyester compounds.[25] It is made by undergoing chemical transformation.[26]

● **Sodium Citrate** is a trisodium salt of citric acid, which is synthetically created. Sodium citrate is also listed as being "synthetic" under 7 C.F.R. § 205.605.   According to 7 U.S.C. § 6502 (21), the term "synthetic" means a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources[.]"

---

[22]     A. Hesham, Y. Mostafa & L. Al-Sharqi, Optimization of Citric Acid Production by Immobilized Cells of Novel Yeast isolates, 48 MYCOBIOLOGY 122, 123 (2020)

[23]     Dubey, Dr. Tanya. "Caprylyl Glycol: The Ultimate Skincare Ingredient You Should Definitely Know about!" Enclaire. Enclaire, February 21, 2022. https://enclaire.in/article/caprylyl-glycol-the-ultimate-skincare-ingredient-you-should-definitely-know-about. (last accessed 11/04/2024).

[24]     *Glycerin—Produced        by        Hydrolysis        of        Fats        and        Oils.* https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf. (last accessed 11/04/2024).

[25]     https://wwwn.cdc.gov/TSP/PHS/PHS.aspx?phsid=1120&toxid=240#:~:text=Propylene%20glycol%20is%20a%20synthetic,lead%20to%20contact%20with%20food.

[26]     https://corpusnaturals.com/blogs/natural-curious/plant-based-propylene-glycol#:~:text=Raw%20material%20source%20matters.,from%20one%20chemical%20to%20another. (last accessed 03/26/2025).

CLASS ACTION COMPLAINT

- **Tocopheryl Acetate** is a synthetic, highly processed form of Vitamin E manufactured using acetic acid.[27]

26. In addition to those ingredients that are not plant-based, the Product contains numerous ingredients that have been subject to significant chemical modification or processing, which materially altered the ingredients' original, natural or plant-based composition. Put differently, to create certain ingredients used in the Product, natural and plant-based ingredients are subjected to substantial processing such that the resulting ingredient used in the Product is an entirely new, synthetically-created ingredient—one that fundamentally differs from the original natural or plant-based ingredient. Accordingly, the Challenged Representation is false, misleading, and deceptive, and therefore unlawful.

**B. Defendant Misleads Plaintiff and Reasonable Consumers, Who Relied on the Material and False Advertising Claims to their Detriment**

27. **Materiality.** The Challenged Representation is material to reasonable consumers, including Plaintiff, in deciding to buy the Product. Specifically, the composition of the Product containing only plant-based ingredients—is important to consumers and motivates them to buy the Product.

28. **Reliance**. The Class, including Plaintiff, reasonably relied on the Challenged Representation in deciding to purchase the Product.

29. **Consumers Lack Knowledge of Falsity**. Consumers, including Plaintiff, do not know, and have no reason to know, at the time of purchase, that the Product's Challenged Representation is false, misleading, deceptive, and unlawful. That is because consumers, including Plaintiff, do not work for Defendant and therefore have no personal knowledge of the actual ingredients used to make the Product or how those ingredients are made, including whether non-plant-based ingredients are included in the Product. Additionally, average consumers do not have the specialized

---

[27] *Alpha-Tocopherol Acetate*. National Center for Biotechnology Information. PubChem Compound Database, U.S. National Library of Medicine, https://pubchem.ncbi.nlm.nih.gov/compound/alpha-Tocopherol-acetate. (last accessed 03/26/2025).

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

knowledge of a chemist or product-developer. Thus, reasonable consumers, like Plaintiff, cannot discern from the Product's ingredient disclosures whether ingredients, are plant-based. Furthermore, reasonable consumers, like Plaintiff, do not ordinarily review information on the back or side panels of a consumer product's packaging, like the Product's packaging, particularly dense, fine-print ingredient disclosures, or review such information on websites. Indeed, studies show that only approximately 7.7% to 11.6% of people even look at the side or back labels of consumer goods, such as ingredient lists, before they buy it.[28]

---

[28] Grunert, Klaus, et. al, *Nutrition knowledge, and use and understanding of nutrition information on food labels among consumers in the UK*, 55 Appetite 177, at 179-181 (2010) available at https://reader.elsevier.com/reader/sd/pii/S0195666310003661?token=95E4146C1BB7D7A7C9A4 87F22F0B445BD44499550086E04870765EBE116ED32DBFE3795E60B69C75831563CD1BC6 655A&originRegion=us-east-1&originCreation=20220720162546 (consumer purchasing behavior study using in-store observation and interview data collection methodology to realistically estimate the degree consumers use nutritional information (found on side/back panels of food product labels and packaging), finding: (1) only **11.6% of respondents**, who looked at a product and placed it in their shopping cart, **were actually observed looking at the side/back panels of its packaging or labels** (panels other than the front panel) before placing it in the cart; (2) of those who looked at the side/back panels, only 31.8% looked at it the product "in detail" (i.e., 3.7% of respondents who looked at the product, looked at side/back panels in detail)); and (3) the **respondents self-reported frequency of reviewing side/back panels** (for nutritional information) **is overreported by 50%** when the in-store interview data and observational data are compared); Grunert, Klaus, et. al, *Use and understanding of nutrition information on food labels in six European countries*, 18(3) Journal of Public Health 261, 261, 263, 266 (2010), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC2967247/ (last accessed July 20, 2022) (consumer purchasing behavior study using in-store observation and interview data collection methodology to evaluate whether people look at food labels before buying them, where they looked, and how long they looked, finding: (1) respondents spent, on average, approximately 35 seconds, per product, on products they bought; and (2) 62.6% of respondents looked at the front packaging, and **only 7.7% looked elsewhere (side/back panels) on the packaging**, for products they bought); Benn, Yael, et al., *What information do consumers consider and how do they look for it, when shopping for groceries online*, 89 Appetite 265, 265, 270 (2015), available at https://www.sciencedirect.com/science/article/pii/S0195666315000422#bib0060 (last accessed October 31, 2024) (consumer purchasing behavior study using online eye-movement tracking and recordation, finding: (1) once on the product webpages, respondents tend to look at the pictures of products, rather than examine detailed product information; and (2) by comparison to pictures of products where 13.83-19.07% of respondents fixated, far less fixated on subsidiary information: 4.17% of respondents looked at nutrition information, 3.30% ingredients, 2.97% allergy information, and 0.09% recycling information for example).

14

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

30. The average consumer spends generally not more than 13 seconds to make an in-store purchasing decision.[29] That decision is heavily based upon the product's front labeling because consumers do not have time to review and read every portion of the label and inspect in detail the rear label which depicts in small print the ingredients.

31. **Defendant's Knowledge**. Defendant knew, or should have known, that the Challenged Representation was false, misleading, deceptive, and unlawful, at the time that Defendant manufactured, marketed, advertised, labeled, and sold the Product using the Challenged Representation to Plaintiff and the Class. Defendant intentionally and deliberately used the Challenged Representation, alongside its massive marketing campaign and brand strategy, to cause Plaintiff and similarly situated consumers to buy the Product believing that the Challenged Representation is true.

a. **Knowledge of Falsity.** Defendant marketed the Product with the Challenged Representation, but Defendant opted to formulate and manufacture them in a manner that does not conform to this representation. Specifically, Defendant advertised and labeled the Product with the Challenged Representation, but, instead of using only ingredients that are plant-based, Defendant chose to make the Product with numerous non-plant-based ingredients.

b. **Knowledge of Reasonable Consumers' Perception.** Defendant knew, or should have known, that the Challenged Representation would lead reasonable consumers into believing that the Product was composed of only plant-based ingredients—i.e., the Product does not contain ingredients that are not plant-based. Not only has Defendant labeled the Product with the Challenged Representation and executed a long-standing brand strategy and advertising campaign to identify the Product with the Challenged Representation, but Defendant also has an obligation under section 5 of the Federal Trade Commission Act, codified at 15 U.S.C. §§ 45, to evaluate its marketing claims from the perspective of the reasonable consumer. That means Defendant was statutorily obligated to consider whether the Challenged

---

[29]    Randall Beard, *Make the Most of Your Brand's 20-Second Window*, NIELSEN (Jan. 13, 2015), https://www.nielsen.com/us/en/insights/article/2015/make-the-most-of-your-brands-20-second-windown/ (citing *Shopping Takes Only Seconds… In-Store and Online*, EHRENBERG-BASS INSTITUTE OF MARKETING SCIENCE (2015)) (last accessed 03/26/2025).

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

Representation, be it in isolation or conjunction with its marketing campaign, would mislead reasonable consumers into believing that the Product was made of only plant-based ingredients. Thus, Defendant either knew the Challenged Representation was misleading before it marketed the Product to the Class, including Plaintiff, or Defendant would have known that it was deceptive had Defendant complied with its statutory obligations.

c. **Knowledge of Materiality.** Defendant knew or should have known that the Challenged Representation is material to consumers. *First*, manufacturers and marketers, like Defendant, generally reserve the front primary display panel of labels on consumer products for the most important and persuasive information, which they believe will motivate consumers to buy the products. Here, the conspicuousness of the Challenged Representation on the Product's labels demonstrates Defendant's awareness of its importance to consumers and Defendant's understanding that consumers prefer and are motivated to buy products that conform to the Challenged Representation. *Second*, manufacturers and marketers repeat marketing claims to emphasize and characterize a brand or product line, shaping the consumers' expectations, because they believe those repeated messages will drive consumers to buy the Product. Here, the constant, unwavering use of the Challenged Representation on the Product, advertisements, and throughout Defendant's marketing campaign, evidence Defendant's awareness that the falsely advertised Product-attribute is important to consumers. It also evidences Defendant's intent to convince consumers that the Product conforms to the Challenged Representation and, ultimately, drive sales.

d. **Defendant Continued Deception, Despite Its Knowledge.** Defendant, as the manufacturer and marketer of the Product, had exclusive control over the Challenged Representation's inclusion on the Product's labels, and advertisements—i.e., Defendant readily and easily could have stopped using the Challenged Representation to sell the Product. However, despite Defendant's knowledge of the Challenged Representation's falsity, and Defendant's knowledge that consumers reasonably rely on the Challenged Representation in deciding to buy the Product, Defendant deliberately chose to market the Product with the Challenged Representation thereby misleading consumers into buying or otherwise overpaying for the Product. Thus, Defendant knew, or should have known, at all relevant times, that the Challenged Representation misleads reasonable consumers, such as Plaintiff, into buying the Product to attain the product-attributes that Defendant falsely advertised and warranted. Indeed, notwithstanding Plaintiff's demand to Defendant to stop misleading consumers with the Challenged Representation, Defendant has continued to market the Product using the Challenged Representation.

32.    By letter dated July 26, 2024, Plaintiff advised Defendant of its false and misleading claims pursuant to California Civil Code Section 1782, subdivision (a)

regarding Defendant's use of non-plant-based, unnatural and synthetic ingredients. Plaintiff has provided Defendant with notice of its violations of the CLRA pursuant to Civil Code § 1782(a).

**C.    No Adequate Remedy at Law**

33.    **No Adequate Remedy at Law.** Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

a.    **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members who purchased the Product more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL.    Similarly, Nationwide Class members who purchased the Product prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b.    **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein.  It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Product with the Challenged Representation, across a multitude of media platforms, including the Product's labels, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the Challenged Representation. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representation and omission made on the type of products at issue).  Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiff (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty.  For example, in some states, breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution.  Thus, Plaintiff and Class members may be entitled to recover under unjust

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

17

enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c. **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Product with the Challenged Representation. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Product that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Product's Challenged Representation is not true and providing accurate information about the Product's true nature; and/or requiring prominent qualifications and/or disclaimers on the Product's front label concerning the Product's true nature. An injunction requiring affirmative disclosures to dispel the public's misperception and prevent the ongoing deception and repeat purchases based thereon, is also not available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation have not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d. **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e. **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

## **CLASS ALLEGATIONS**

34.    **Class Definition**. Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated, and as members of the Classes defined as follows:

> All persons or entities that, within four years prior to the filing of this Complaint through present, purchased the Product in California, displaying the Challenged Representation on the Product' labels, for purposes other than resale ("**Class**").

35.    **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

36.    **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definitions presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

37.    **Numerosity:** Members of the Class are so numerous that joinder of all members is impracticable. Upon information and belief, the Nationwide Class consists of tens of thousands of purchasers (if not more) dispersed throughout the United States, and the California Subclass likewise consists of thousands of purchasers (if not more) dispersed throughout the State of California. Accordingly, it would be impracticable to join all members of the Class before the Court.

38.    **Common Questions Predominate:** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues.  Included within the common questions of law or fact are:

    a.    Whether Defendant engaged in unlawful, unfair or deceptive business practices by advertising and selling the Product;

Malk & Pego Law Group, LLP   |   1241 S. Glendale, Ave Suite 204, Glendale, CA 91205   |   P: (818) 484-5204   |   malkpegolaw.com

b.   Whether Defendant's conduct of advertising and selling the Product as only containing plant-based ingredients, creating the reasonable assumption that the Product does not contain any non-plant-based ingredients, when the Product contains some combination of non-plant-based ingredients, constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq.*;

c.   Whether Defendant used deceptive representation in connection with the sale of the Product in violation of Civil Code section 1750, *et seq.*;

d.   Whether Defendant represented that the Product has characteristics or quantities that it does not have in violation of Civil Code section 1750, *et seq.*;

e.   Whether Defendant advertised the Product with intent not to sell it as advertised in violation of Civil Code section 1750, *et seq.*;

f.   Whether Defendant's labeling and advertising of the Product is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

g.   Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq.*;

h.   Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

i.   Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

j.   Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

k.   Whether Plaintiff and the Class paid more money for the Product than they actually received;

l.   How much more money Plaintiff and the Class paid for the Product than they actually received;

m.   Whether Defendant's conduct constitutes breach of warranty;

n.   Whether Plaintiff and the Class are entitled to injunctive relief; and

o.   Whether Defendant was unjustly enriched by its unlawful conduct.

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malk@pogolaw.com

39. **Typicality**: Plaintiff's claims are typical of the claims of the Class Members he seeks to represent because Plaintiff, like the Class Members, purchased Defendant's misleading and deceptive Product. Defendant's unlawful, unfair and/or fraudulent actions concern the same business practices described herein irrespective of where they occurred or were experienced. Plaintiff and the Class sustained similar injuries arising out of Defendant's conduct. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

40. **Adequacy**: Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

41. **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

    a.    The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

    b.    Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

    c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

CLASS ACTION COMPLAINT

d.  When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.  This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

42.  **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

43.  **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

44.  **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## <u>COUNT ONE</u>

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code §§ 17200, *et seq*.)

### (*Individually and On Behalf of the Class*)

45.  **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

46.  **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

Malk & Pogo Law Group, LLP  |  1241 S. Glendale. Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malk@pogolaw.com

CLASS ACTION COMPLAINT

47.    **False Advertising Claims.** Defendant, in its labeling and advertising of the Product, made false and misleading statements and fraudulent omissions regarding the quality and characteristics of the Product—specifically, the Challenged Representation (i.e., that the Product is composed of only plant-based ingredients) — despite the fact the Product also contains six non-plant-based, synthetic ingredients. Such claim and omission appear on the front labels of the Product, which is sold at retail stores, point-of-purchase displays, and online.

48.    **Defendant's Deliberately False and Fraudulent Marketing Scheme.** Defendant does not have any reasonable basis for the claims about the Product made in Defendant's advertising and on Defendant's labeling because the Product's ingredients are non-plant-based, unnatural, synthetic, and/or artificial. Defendant knew and knows that the Product contains non-plant-based ingredients, yet Defendant intentionally advertises and markets the Product to cause reasonable consumers to believe that the Product is plant-based.

49.    **False Advertising Claims Cause Purchase of Product.** Defendant's labeling and advertising of the Product led to, and continue to lead to, reasonable consumers, including Plaintiff, believing that the Product contained only plant-based ingredients, to the exclusion of non-plant-based, synthetic ingredients.

50.    **Injury In Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's Challenged Representation—namely Plaintiff and the California Subclass lost the purchase price for the Product they bought from the Defendant.

51.    **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."  Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

52. **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail itself of reasonably available, lawful alternatives to further its legitimate business interests.

53. **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

54. **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Product. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentation, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentation.

55. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Product. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Product, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malk@pogolaw.com

violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

### "Unfair" Prong

56. **Unfair Standard.** Under the UCL, a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

57. **Injury.** Defendant's actions of mislabeling the Product with the Challenged Representation do not confer any benefit to consumers; rather, doing so causes injuries to consumers, who do not receive a product commensurate with their reasonable expectations, overpay for the Product, and receive a product of lesser standards than what they reasonably expected to receive. Consumers cannot avoid any of the injuries caused by Defendant's deceptive labeling and/or advertising of the Product. Accordingly, the injuries caused by Defendant's deceptive labeling and advertising outweigh any benefits.

58. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. They "weigh the utility of the Defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

59. **No Utility.** Here, Defendant's conduct of labeling the Product as made with plant-based ingredients—when the Product contains numerous non-plant-based ingredients, has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

60. **Legislative Declared Policy.** Some courts require that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened

CLASS ACTION COMPLAINT

impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

61.    **Unfair Conduct.** Defendant's labeling and advertising of the Product, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentation constitutes an unfair business practice within the meaning of California Business and Professions Code Section 17200.

62.    **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Product with the Challenged Representation.

63.    **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

64.    **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of labeling the Product with the Challenged Representation.

65.    **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Product. Specifically, Plaintiff and the California Subclass paid for a Product that was supposedly made with only plant-based ingredients, but instead purchased a Product that contains numerous non-plant-based ingredients. Plaintiff and the California Subclass would not have purchased the Product, or would have paid substantially less for the Product, if they had known that the Product's advertising and labeling were

CLASS ACTION COMPLAINT

deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### "Fraudulent" Prong

66.    **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

67.    **Fraudulent & Material Challenged Representation.** Defendant used the Challenged Representation with the intent to sell the Product to consumers, including Plaintiff and the California Subclass. The Challenged Representation is false, and Defendant knew or should have known of its falsity. The Challenged Representation is likely to deceive consumers into purchasing the Product because it is material to the average, ordinary, and reasonable consumer.

68.    **Fraudulent Business Practice.** As alleged herein, the misrepresentation by Defendant constitutes a fraudulent business practice in violation of California Business & Professions Code Section 17200.

69.    **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and false Challenged Representation to their detriment in that they purchased the Product.

70.    **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Product with the Challenged Representation.

71.    **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

72.    **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant

CLASS ACTION COMPLAINT

from continuing to engage, use, or employ its practice of labeling the Product with the Challenged Representation.

73.    **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Product. Specifically, Plaintiff and the California Subclass paid for a Product that was supposedly made with only plant-based ingredients, but instead purchased a Product that contains numerous non-plant-based ingredients. Plaintiff and the California Subclass would not have purchased the Product, or would have paid substantially less for the Product, if they had known that the Product's advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

## "Unlawful" Prong

74.    **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

75.    **Violations of CLRA and FAL.** Defendant's labeling of the Product, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

76.    **Additional Violations.** Defendant's conduct in making the false representation described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to its competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentation of material facts,

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP   |   1241 S. Glendale, Ave Suite 204, Glendale, CA 91205   |   P: (818) 484-5204   |   malkpogolaw.com

as set forth herein, violates California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

77. **Unlawful Conduct.** Defendant's labeling and advertising of the Product, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

78. **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Product with the Challenged Representation and/or omitting that the Product contained non-plant-based ingredients.

79. **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

80. **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of false and deceptive advertising of the Product.

81. **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Product. Specifically, Plaintiff and the California Subclass paid for a Product that was supposedly comprised of only plant-based ingredients, but instead purchased a Product that contains numerous non-plant-based ingredients. Plaintiff and the California Subclass would not have purchased the Product, or would have paid substantially less for the Product, if they had known that the Product's advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

///

CLASS ACTION COMPLAINT

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

## COUNT TWO

### Violation of California False Advertising Law

### (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

### (*Individually and On Behalf of the Class*)

82.    **Incorporation by reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

83.    **FAL Standard.** The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

84.    **False & Material Challenged Representation Disseminated to Public.** Defendant violated section 17500 when it advertised and marketed the Product through the unfair, deceptive, untrue, and misleading Challenged Representation disseminated to the public through the Product's labeling, marketing, and advertising. This representation was false because the Product does not conform to it. The representation was material because it is likely to mislead a reasonable consumer into purchasing the Product.

85.    **Knowledge.** In making and disseminating the representation alleged herein, Defendant knew or should have known that the representation was untrue or misleading, and acted in violation of § 17500.

86.    **Intent to Sell.** Defendant's Challenged Representation was specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Product.

87.    **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Product. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Product, and any interest that would have accrued on those monies, in an amount to

CLASS ACTION COMPLAINT

be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct prevent ongoing and future harm that will result.

## COUNT THREE

### Violation of California Consumers Legal Remedies Act

### (Cal. Civ. Code §§ 1750, *et seq.*)

### (*Individually and On Behalf of the Class*)

88. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

89. **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

90. **Goods/Services.** The Product is a "good," as defined by the CLRA in California Civil Code §1761(a).

91. **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

92. **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

93. **Transactions.** The purchase of the Product by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code § 1761(e).

94. **Violations of the CLRA.** Defendant violated the following sections of the CLRA by selling the Product to Plaintiff and the California Subclass through the false, misleading, deceptive, and fraudulent Challenged Representation:

a. Section 1770(a)(5) by representing that the Product has "characteristics, . . . uses [or] benefits . . . which [it] do[es] not have."

Malk & Pogo Law Group, LLP | 1241 S. Glendale, Ave Suite 204, Glendale, CA 91205 | P: (818) 484-5204 | malkpogolaw.com

b. Section 1770(a)(7) by representing that the Product "[is] of a particular standard, quality, or grade . . . [when] [it is] of another."

c. Section 1770(a)(9) by advertising the Product "with [the] intent not to sell [it] as advertised."

95.    **Knowledge.** Defendant's uniform and material representation regarding the Product was likely to deceive, and Defendant knew or should have known that its representation was untrue and misleading.

96.    **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Product.

97.    **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury. Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Product and/or would have purchased it on different terms had they known the truth.

98.    **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the Challenged Representation in deciding to purchase the Product. The Challenged Representation was a substantial factor. The Challenged Representation was material because a reasonable consumer would consider it important in deciding whether to purchase the Product.

99.    **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code, section 1782, more than thirty days prior to the filing of this complaint, on or around July 26 of 2024, Plaintiff's counsel, acting on behalf all members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Defendant 9199-4467 Québec Inc. at its headquarters and principal place

of business (8500 Decarie Blvd., 7th Floor, Mont-Royal, Québec, H4P 2N2, Canada), and its alternative address (228-1350 rue Mazurette, Montréal Québec H4N1H2, Canada).

100. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Product. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Product, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of damages, restitution, disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

101. **Injunction.** Given that Defendant's conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendant's false advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise requires Defendant to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendant's deceptive labeling of the Product with the Challenged Representation.

102. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and

consumers to pay for a Product that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant. Accordingly, Plaintiff seeks an award of punitive damages against Defendant.

## COUNT FOUR

### Breach of Express Warranty

### *(Individually and On Behalf of the Class)*

103.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

104.    **Express Warranty**. Defendant expressly warrants that the Products are plant-based, as set forth above.  Defendant's claims constitute an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiff placed importance on Defendant's claims.

105.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiff and the Class.

CLASS ACTION COMPLAINT

Malik & Pogo Law Group, LLP   |   1241 S. Glendale, Ave Suite 204, Glendale, CA 91205   |   P: (818) 484-5204   |   malikpogolaw.com

106. Defendant breached the terms of the contract, including the express warranties, with Plaintiff and the Class by not providing Products that conform to the advertising and label claims.

107. As a result of Defendant's breach of contract, Plaintiff and the Class have been damaged in the amount to be determined at trial.

## COUNT FIVE

### Breach of Implied Warranty

### *(Individually and On Behalf of the Class)*

108. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

109. **Implied Warranty**. Unless excluded or modified, a warranty that a good shall be merchantable is implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

110. Defendant is a merchant with respect to the Products, as it manufactures, distributes, and sells the Products nationwide.

111. In order to be merchantable, goods must conform to the promises or affirmations of fact made on the container or labeling.

112. Defendant breached the implied warranty of merchantability to Plaintiff and the Class in that the labels of the Products promised and affirmed that the Products are plant-based. Contrary to the promise and affirmation of fact, the Products contain numerous non-plant-based, synthetic and artificial ingredients.

113. As a result of Defendant's conduct, Plaintiff and the Class did not receive merchantable goods as impliedly warranted by Defendant.

114. Defendant did not exclude or modify the Products' implied warranty of merchantability.

115. As a proximate result of Defendant's breach of its implied warranty, Plaintiff and members of the Class incurred damages. Plaintiff and members of the Class were damaged as a result of Defendant's failure to comply with its obligations

Malk & Pogo Law Group, LLP | 1241 S. Glendale, Ave Suite 204, Glendale, CA 91205 | P: (818) 484-5204 | malkpogolaw.com

under the implied warranty, since Plaintiff and members of the Class paid for Products that did not have the promised quality and nature, paid a premium for the Products when they could have instead purchased other less expensive alternative products, and lost the opportunity to purchase other, true plant-based products.

116.    Plaintiff and the Class are therefore entitled to recover all available remedies for said breach.

## COUNT SIX

### Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*
### Violation of Written Warranty
### (*Individually and On Behalf of the Class*)

117.    **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

118.    The MMWA, 15 U.S.C. §§ 2301, *et seq.*, creates a private cause of action for breach of "written warranty" as defined by that Act. 15 U.S.C. § 2301(6) and § 23 10(d)(l).

119.    The Products are "consumer products" as defined in 15 U.S.C. § 2301(1), as they constitute tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes.

120.    Plaintiff and Class members are "consumers" as defined in 15 U.S.C. § 2301(3), since they are buyers of the Products for purposes other than resale.

121.    Defendant is an entity engaged in the business of making the Products available, either directly or indirectly, to consumers such as Plaintiff and the Class. As such, Defendant is a "supplier" as defined in 15 U.S.C. § 2301(4).

122.    Through its labeling, Defendant gave and offered a written warranty to consumers relating to the nature and quality of the ingredients in the Products. As a result, Defendant is a "warrantor" within the meaning of 15 U.S.C. § 2301(5).

123.    Defendant provided a "written warranty" within the meaning of 15 U.S.C. § 2301(6) for the Products by prominently affirming and promising in writing on the

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

labeling of the Products that they are plant-based. This affirmation of fact regarding the nature and quality of the Products constituted, and was intended to convey to purchasers, a written promise that the Products are plant-based. As such, this written promise and affirmation was part of the basis of Plaintiff's and Class members' bargains with Defendant in purchasing the Products.

124.    Defendant breached the written warranty to Plaintiff and the Class by failing to provide and supply Products that fully plant-based. Since the Products do not have the requisite qualities and character promised by Defendant's written warranty, the Products did not comply with Defendant's obligations under the written warranty to supply "plant-based" Products to Plaintiff and the Class.

125.    Plaintiff provided Defendant notice of, and a reasonable opportunity to cure, the defects in the Products and remedy the harm to Plaintiff and the Class. Defendant failed to take corrective action.

126.    Plaintiff and Class members were injured by Defendant's failure to comply with its obligations under the written warranty, since Plaintiff and Class members paid for Products that did not have the promised qualities and nature, did not receive Products that are fully plant-based. They accordingly paid a premium for the Products when they could have instead purchased other less expensive alternatives, and lost the opportunity to purchase other products that are truly plant-based.

127.    Plaintiff and the Class therefore seek and are entitled to recover "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time expended)" as provided in 15 U.S.C. § 2310(d).

///

///

///

///

///

Malik & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

## <u>COUNT SEVEN</u>

### Magnuson Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*

### Violation of Implied Warranty of Merchantability Under State Law

### *(Individually and On Behalf of the Class)*

128. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

129. The MMWA creates a federal cause of action for breach of an implied warranty of merchantability. 15 U.S.C. § 2310(d)(1). Unlike a "written warranty," the term "implied warranty" under the MMWA is defined by reference to state law. 15 U.S.C. § 2301(7) ("The term 'implied warranty' means an implied warranty arising under State law (as modified by sections 2308 and 2304(a) of this title) in connection with the sale by a supplier of a consumer product.") Thus, the MMWA creates a federal cause of action for breach of an implied warranty of merchantability arising under state law.

130. The elements of the breach of implied warranty of merchantability claim are met as described fully in Plaintiff's Fifth Cause of Action, ¶¶ 110-118. *Supra.*

131. Additionally, the remaining requirements of the MMWA are met.

132. The Products each are a "consumer product" as defined in 15 U.S.C. § 2301(1), as they constitute tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes.

133. Plaintiff and the members of the Class are "consumers" as defined in 15 U.S.C. § 2301(3), since they are buyers of the Products for purposes other than resale.

134. Defendant is an entity engaged in the business of making the Products available, either directly or indirectly, to consumers such as Plaintiff and the Class. As such, Defendant is a "supplier" as defined in 15 U.S.C. § 2301(4).

135. Defendant knew of, and caused, the Products to state "plant-based" on their labels. This statement created an implied warranty of merchantability under state law in connection with the sales of the Products to Plaintiff and the Class. As such,

Defendant was obligated under an implied warranty of merchantability, and, accordingly, Defendant is a "warrantor" as that term is defined at 15 U.S.C. § 2301(5).

136.    Defendant was provided notice and a reasonable opportunity to cure the defects in the Products and remedy the harm to Plaintiff and the Class, but failed to do so, as set forth above.

137.    Plaintiff and the Class therefore seek and are entitled to recover "damages and other legal and equitable relief" and "costs and expenses (including attorneys' fees based upon actual time as provided in 15 U.S.C. § 2310(d) and as available under state law.

## COUNT EIGHT

### Unjust Enrichment/Restitution

### (*Individually and On Behalf of the Class*)

138. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

139. **Plaintiff/Class Conferred a Benefit.** By purchasing the Product, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Product.

140. **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Product, Defendant would not generate revenue from the sales of the Product.

141. **Defendant's Unjust Receipt Through Deception.** Defendant's owing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive representation and omission.

142. **Causation/Damages.** As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Product. Further, Plaintiff and members of the

Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Product, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's conduct to prevent ongoing and future harm that will result.

143. **Punitive Damages.**  Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for a Product that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

## **PRAYER FOR RELIEF**

144. **WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

Malik & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malk@pogolaw.com

a. **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel, consistent with applicable law;

b. **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein, consistent with applicable law and pursuant to only those causes of action so permitted;

c. **Injunction:** For an order requiring Defendant to change its business practices to prevent or mitigate the risk of the consumer deception and violations of law outlined herein. This includes, for example, orders that Defendant immediately cease and desist from selling the unlawful Product in violation of law; that enjoin Defendant from continuing to market, advertise, distribute, and sell the Product in the unlawful manner described herein; that require Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Product resulting from Defendant's unlawful conduct; and/or that require Defendant to take all further and just corrective action, consistent with applicable law and pursuant to only those causes of action so permitted;

d. **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with applicable law and pursuant to only those causes of action so permitted;

e. **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with applicable law and pursuant to only those causes of action so permitted;

f. **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with applicable law and pursuant to only those causes of action so permitted;

g. **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with applicable law and pursuant to only those causes of action so permitted; and

h. **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

145. Plaintiff hereby demands a trial by jury on all issues and causes of action so triable.

Malk & Pogo Law Group, LLP | 1241 S. Glendale, Ave Suite 204, Glendale, CA 91205 | P: (818) 484-5204 | malkpogolaw.com

CLASS ACTION COMPLAINT

DATED: March 27, 2025          **MALK & POGO LAW GROUP, LLP**

                               */s/ Valter Malkhasyan*
                               Valter Malkhasyan, Esq.
                               Erik Pogosyan, Esq.


                               *Counsel for Plaintiff and the proposed Class*

Malk & Pogo Law Group, LLP  |  1241 S. Glendale, Ave Suite 204, Glendale, CA 91205  |  P: (818) 484-5204  |  malkpogolaw.com

CLASS ACTION COMPLAINT